BYE, Circuit Judge,
dissenting.
I respectfully dissent. I agree with the majority opinion to the extent that the opinion holds the initial encounter between Jesus Perdoma and law enforcement was consensual, and that the officers had a *754 sufficient legal basis to arrest Perdoma. I would nevertheless reverse the district court’s denial of Perdoma’s motion to suppress because I believe the subsequent warrantless search of Perdoma’s luggage was unreasonable.
I
As a threshold matter, I disagree emphatically with the majority’s conclusion that Perdoma has waived his right to challenge, in whole or in part, the legality of the search of his luggage under Arizona v. Gant, — U.S. -, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). The issue of whether the search fell within the search incident to arrest exception to the Fourth Amendment warrant requirement was fully litigated at the district court level — indeed, the district court ordered supplemental briefing on the precise issue. After the district court denied Perdoma’s motion to suppress, Perdoma entered a conditional guilty plea specifically reserving his right to challenge the search on appeal. Before this court, Perdoma urges us to reverse the district court on the grounds that the search was not legal. Frankly, it is difficult to imagine what more Perdoma could have done to preserve the issue.
The majority appears to ground its conclusion on its assertion that “Perdoma has not meaningfully argued, on appeal or before the district court, how the circumstances of his arrest in a public bus terminal rendered him ‘secured’ and out of reaching distance of his bag in a manner analogous to the circumstances in Gant.” Ante at 751. The record indicates otherwise. In his supplemental brief in support of his motion to suppress, Perdoma argued that under the facts of the present case, “[bjecause officers had taken the bag from him in the bus depot’s lobby, Perdoma could not gain possession of a weapon or destructible evidence from it.” Appellant’s Mem. 2 (emphasis added). Addressing another relevant consideration under Gant, Perdoma asserted that he was in police custody because he had been tackled to the floor by several police officers. The same factual points were developed during the suppression hearing on March 3, 2009, where Officer Alan Eberle testified that Perdoma’s bag was searched in the presence of three officers after Perdoma had been apprehended, placed in handcuffs, and removed from the public terminal. The district court, as I discuss below, ultimately accepted Perdoma’s argument that the search of his luggage was not a valid search incident to arrest, putting the majority in the uncomfortable position of asserting that Perdoma failed to make the argument that was not only raised, but in fact carried the day at the district court. On appeal before this court, Perdoma renews the same argument, stating that “[bjecause officers took the bag from him, Mr. Perdoma could not gain possession of its contents.” Appellant’s Br. 16 (emphasis added).
Ironically, it is the government, by failing to raise the issue of waiver in its brief or at oral argument, that has certainly waived any argument that Perdoma waived his right to challenge the legality of the search. See United States v. Greene, 513 F.3d 904, 906-07 (8th Cir.2008); Latorre v. United States, 193 F.3d 1035, 1037 n. 1 (8th Cir.1999) (declining to address whether appellant’s appeal was precluded by a waiver provision in the appellant’s plea agreement because the government had failed to raise the issue in the district court or in the appeal). By sua sponte making and accepting a waiver argument on the government’s behalf, the majority ignores this precedent. I would conclude Perdoma has not waived his right to appeal the legality of the search of his luggage.
*755 II
Properly raised, the question of whether the search of Perdoma’s luggage was reasonable presents a more difficult question.
Under the Fourth Amendment, the “general rule” is that “warrantless searches are presumptively unreasonable.” Horton v. California, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Indeed, “searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions.” Id.
In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court recognized the search incident to arrest exception to the warrant requirement. Specifically, the Court held that a search incident to arrest may only include “the arrestee’s person and the area ‘within his immediate control’ — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.” Arizona v. Gant, — U.S.-,-, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009) (quoting Chimel, 395 U.S. at 763, 89 S.Ct. 2034). “That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy.” Gant, 129 S.Ct. at 1716 (citing Chimel, 395 U.S. at 763, 89 S.Ct. 2034).
In New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court applied the holding of Chimel to the automobile context. The Court issued what was then commonly understood to be a bright line rule: when an officer lawfully arrests “the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile” and any containers therein. Belton, 453 U.S. at 460,101 S.Ct. 2860.
Most courts, including the Eighth Circuit, read Belton as expanding Chimel, thus recognizing a fairly broad power to search incident to arrest. For example, in United States v. Morales, 923 F.2d 621, 626 (8th Cir. 1991), citing Belton, we stated that “[subsequent decisions [to Chimel] of the Supreme Court and this court have interpreted the phrase ‘immediate control’ to extend beyond the area that is conveniently or easily accessible to the arrestee.” Drawing on the analogy to Belton, this court upheld in United States v. Palumbo the actions of officers who searched an area behind a dresser drawer while the arrestee stood handcuffed in the same room. United States v. Palumbo, 735 F.2d 1095, 1097 (8th Cir.1984). See also United States v. Mefford, 658 F.2d 588, 591-93 (8th Cir.1981) (although police officer held arrestee’s sack, the sack was still within arrestee’s area of “immediate control”).
Recently, the Supreme Court decided Arizona v. Gant. In Gant, the defendant was arrested in his car, placed in restraints, and then placed in the rear of the police car. Gant, 129 S.Ct. at 1715. Police officers then searched the defendant’s car, discovering drugs. Id. The Supreme Court held that the search was not a valid search incident to arrest. Id. at 1719. Specifically, the Court said that the broad rule from Belton must be read in light of the constraints outlined in Chimel:
To read Belton as authorizing a vehicle search incident to every recent occupant’s arrest would ... untether the rule from the justifications underlying the Chimel exception — a result clearly incompatible with our statement in Bel *756 ton that it “in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests.” 453 U.S. at 460, n. 3, 101 S.Ct. 2860. Accordingly, we reject this reading of Belton and hold that the Chimel rationale authorizes police to search a vehicle incident to a recent occupant’s arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.

Id.

Gant held that the search incident to arrest exception applies only in circumstances where the arrestee is unsecured and in reaching distance of the passenger compartment Of the vehicle. This case is subject to the same rules, even though it does not involve a vehicle, but rather luggage. While on the surface the majority purports not to address the issue of Gant’s applicability outside the vehicle-search context, see ante at 751-52, in substance it goes to great lengths to limit Gant to vehicle searches. Its efforts are unavailing for at least three reasons. For one, all Gant does is return the analysis of the search incident to arrest exception to the familiar moorings of Chimel, a case that did not deal with a vehicle search. Two, it is clear that Gant contemplates that its Chimel-hased rationale would apply to non-vehicle searches because the opinion goes through trouble of stating that the other part of its rationale — that based on Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004)— applies only in “circumstances unique to the vehicle context.” Gant, 129 S.Ct. at 1719. And three, we previously have had little trouble concluding that the Belton principles translate into non-vehicle contexts. See, e.g., Palumbo, 735 F.2d at 1097; Mefford, 658 F.2d at 592-93. There is no reason why having done so, we should now circumscribe invalidation of the same Belton principles to a vehicle context only.
In sum, Gant is controlling on the facts of this case. Applying the standard announced in Gant, the district court concluded that under the facts of this case, the search incident to arrest exception did not apply because the search in this case was not necessary to safeguard evidence or protect officer safety. The district court went on to hold, however, that the search of the bag was reasonable because the search was supported by independent probable cause. But, as the majority correctly recognizes, see ante at 753 n. 7, the independent probable cause justification for the search advanced by the district court was erroneous. The existence of independent probable cause to search Perdoma’s luggage is a red herring in this case. The issue is not whether the police had probable cause to search the bag, but rather whether the police needed to secure a warrant before searching the bag. Luggage, unlike vehicles, is not subject to any independent exception to the warrant requirement. Compare United States v. Chadwick, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (station house search of two-hundred pound footlocker does not qualify for warrantless search incident to arrest) with California v. Carney, 471 U.S. 386, 388, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (departing from the traditional warrant requirement in the case of vehicles because of the lower expectation of privacy in vehicles and also their unique mobility). Thus, even if the police had independent probable cause to search Perdoma’s bag, the search would nevertheless have been constitutionally unreasonable because the search was conducted without a search warrant.
The ultimate issue in this case, then, is whether the district court erred when it *757 concluded that the search of Perdoma’s bag was not valid under incident to arrest exception. I would conclude the district court did not err. After Perdoma was subdued, he was handcuffed with his hands behind his back. Two police officers then led Perdoma in handcuffs to the back of the bus terminal away from the public. One of the officers carried Perdoma’s bag, a duffel bag zipped shut, to the rear of the terminal; the second officer escorted Perdoma. At the rear of the terminal, a third police officer joined the group. One officer searched Perdoma’s person while another officer simultaneously searched Perdoma’s bag. Contrary to the majority’s assertions, there is no indication on the record that the officers were concerned about Perdoma’s strength; indeed, the record is silent as to the relative sizes of the individuals involved in the arrest. Under these facts, I would conclude the district court did not err when it concluded that the search was not authorized under the search incident to arrest exception. At the time his bag was searched, Perdoma was restrained and unable to access his luggage, which had already been taken from him. Indeed, Perdoma was more restrained than the defendant in Gant. Whereas the defendant in Gant was handcuffed but unsupervised in the back seat of a police car, Perdoma was both handcuffed and being personally searched by another police officer when the search of the luggage occurred. Although the majority correctly points out there may have existed an extremely remote possibility that Perdoma could have broken free, singlehandedly overpowered three police officers, and, while handcuffed behind his back, unzipped his luggage, and gained access to a weapon or evidence, Gant teaches us that such farfetched possibilities do not justify a warrantless search incident to arrest — after all, the same extremely remote possibility existed in Gant as well. See Gant, 129 S.Ct. at 1719 (“Because police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable.”) (emphasis added). The majority, as does this dissent, cites cases decided before Gant approving of searches conducted in factual circumstances similar to this case. But such cases are of limited value, as they may or may not support the same result post-Gcmi. As discussed above, these cases were decided during a period when this court, among others, used the rationale from Belton to justify broad searches incident to arrest practically untethered to any interest in protecting officer safety or safeguarding evidence.
Because I would conclude the district court did not err when it held the search was not a valid search incident to arrest, I would reverse and remand with instructions to grant Perdoma’s motion to suppress.
Ill
I respectfully dissent.